IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MICHAEL JACOBSON, | ) | |
| | ) | |
| Plaintiff, | ) | 8:03cv548 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| SOLID WASTE AGENCY OF NORTHWEST NEBRASKA, | ) ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on filing no. 22, the Motion for Summary Judgment filed by the defendant, Solid Waste Agency of Northwest Nebraska ("SWANN").[1] The defendant seeks dismissal of the Petition for Declaratory Judgment ("complaint") filed in this case by the plaintiff, Michael Jacobson, because the claims and issues alleged in the complaint were, or could have been, raised in previous litigation filed by the plaintiff. Consequently, according to the defendant, the claims and issues in this case are barred by the principles of res judicata and collateral estoppel. The Nebraska Supreme Court's decision in the previous litigation is reported as Jacobson v. Solid Waste Agency of Northwest Nebraska (SWANN), 653 N.W.2d 482 (Neb. 2002), cert. denied, 540 U.S. 873 (2003) ("Jacobson I").[2]

"Under the traditional rule of res judicata, sometimes called claim preclusion, any rights, facts, or matter in issue directly adjudicated or necessarily involved in the determination of an action before a competent court in which a judgment or decree is rendered upon the merits is conclusively settled by the judgment therein and cannot again be litigated by the parties and privies." Cole v. Wilson, 627 N.W.2d 140, 144 (Neb. App. 2001). See also Mabile v. Drivers Management, Inc., 660 N.W.2d 537, 543 (Neb. App. 2003): "Res judicata bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions."

---

[1]The parties have consented to the jurisdiction of the undersigned Magistrate Judge for all purposes up to and including the entry of judgment.

[2]The plaintiff's Petition for Writ of Certiorari to the United States Supreme Court in the previous litigation is available on Westlaw at 2003 WL 22428411 (Apr. 3, 2003).

1

Thus, "[u]nder res judicata, a final judgment on the merits is conclusive upon the parties in any later litigation involving the same cause of action .... Res Judicata bars relitigation not only of those matters litigated, but also of those which might have been litigated in an earlier proceeding .... Res judicata also applies to the litigation of defenses." Harsh International, Inc. v. Monfort Industries, Inc., 662 N.W.2d 574, 581 (Neb. 2003).

"Summary judgments, judgments on directed verdict, judgments after trial, default judgments, and consent judgments are all generally considered to be on the merits for purposes of res judicata, while dismissals on technical procedural grounds are generally not on the merits." Mabile v. Drivers Management, Inc., 660 N.W.2d at 543, citing Cole v. Clarke, 641 N.W.2d 412 (2002). A judgment of dismissal based on the failure of a claimant to state a cause of action is considered a judgment on the merits for res judicata purposes, even if a good cause of action might have been stated by amendment. Cole v. Clarke, 641 N.W.2d 412, 416 (Neb. App. 2002).

"Res judicata refers to claim preclusion, while collateral estoppel refers to issue preclusion, two different concepts, although the two terms are often used together .... Under collateral estoppel, when an issue has been determined by a final judgment, that issue cannot again be litigated between the same parties in a 'future lawsuit.'" Billingsley v. BFM Liquor Management, Inc., 645 N.W.2d 791, 800 (Neb. 2002).

Collateral estoppel means that when an issue of ultimate fact has been determined by a final judgment, that issue cannot again be litigated between the same parties in a subsequent lawsuit. Four conditions must exist for the doctrine of collateral estoppel to apply: (1) The identical issue was decided in a prior action, (2) there was a final judgment on the merits, (3) the party against whom the rule is applied was a party or in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. Farm Credit Bank of Omaha v. Stute, 537 N.W.2d 496, 497 (Neb.1995).

Since 1985, the plaintiff has been the sole resident and tenant of the real property located at 613 North Ash Street, in Gordon, Nebraska. For the same period, the owner of the property has maintained an address at RR1 Box 113, Gordon, Nebraska. In October of 1992, SWANN was created, and in October of 1993, SWANN began billing the plaintiff for garbage service.

"SWANN is a political subdivision created under the Interlocal Cooperation Act, Neb. Rev. Stat. §§ 13-801 to 13-827 (Reissue 1997), and the Integrated Solid Waste Management Act. The city of Gordon, located in Sheridan County, Nebraska, is a member of SWANN, and Jacobson's residence in Gordon is located within SWANN's jurisdictional area. SWANN was formed for the purpose of management, collection, disposal, and recycling of solid waste within its jurisdictional area ...." Jacobson I, 653 N.W.2d at 485.

On March 20, 1999, the plaintiff appeared before the Board of Directors of SWANN and testified that he has never used SWANN's garbage services. Instead he hauls waste

to a solid waste landfill owned and operated on an Indian reservation.  After the plaintiff failed to pay his bill, SWANN converted the plaintiff's unpaid obligation of $879.95 into a special tax, and a bank bought the tax lien.

The plaintiff then filed his first Petition for Declaratory Judgment on November 17, 1999, in the District Court of Dawes County, Nebraska.  After various amendments, the Petition alleged that since January 21, 1999, SWANN had regularly billed Jacobson for solid waste collection, transportation and disposal services at the rate of $14.80 per month; that the plaintiff had never utilized SWANN's services; that SWANN had no right to bill the plaintiff; that any purported past liability of the plaintiff to SWANN should be discharged; and that SWANN should be prospectively enjoined from attempting to collect funds from the plaintiff.  SWANN responded that Neb. Rev. Stat. § 13-2020 empowered SWANN to regulate the disposal of solid waste generated within its jurisdictional area, and that the plaintiff had failed to comply with regulations enacted pursuant to  Neb. Rev. Stat. § 13-2020(4) for opting out of the system.

In Jacobson I, the Nebraska Supreme Court ruled in favor of SWANN, making the following determinations:

First, SWANN has the power under state law to promulgate ordinances.  See Jacobson I, 653 N.W.2d at 487:  "It is clear from established case law, as well as from a plain reading of the Act, that a political subdivision such as SWANN is "expressly empowered to establish ordinances regulating the collection and removal of garbage."

Second, a 1997 amendment incorporated into Neb. Rev. Stat. § 13-2020(4) creates a "rebuttable presumption that premises of a solid waste generator[3] located within an area served by a public solid waste collection and disposal system are 'served' by such a system.  The generator is therefore subject to the system's charges unless the generator takes the steps necessary to obtain an exemption."  Id. at 488.

Third, the plaintiff failed to take the required procedural steps to opt out of SWANN's garbage collection, transportation and disposal services and to obtain an exemption from SWANN's service fees.  Id. at 493.

Fourth, SWANN's ordinance establishing procedures for obtaining an exemption are valid.  Id. at 490-93.   A waste "generator," such as the plaintiff, may employ the following procedures to opt out *prospectively* from use of SWANN's services:

> Although SWANN cannot require a waste generator to use its system and pay its charges, it is authorized by [Neb. Rev. Stat. § 13-2020(4)] to require such persons or entities, as a condition of being exempted from liability for such charges, to prove that they are disposing of solid waste through

---

[3]A solid waste "generator" is a person or entity generating waste.

>alternate means which are consistent with SWANN's statutory obligation to provide for safe and sanitary disposal of solid waste within its jurisdictional area. Section 4.05 seeks to accomplish this objective by requiring those waste generators electing not to use SWANN's services to provide a written statement that they will use an alternate permitted facility and will not use SWANN's services from and after the date of the statement. Under § 4.05, this election to opt out of SWANN's collection and disposal services is effective until the waste generator either uses SWANN's services or fails to provide proof, consisting of receipts showing that waste is being taken to a permitted facility at least twice monthly.

Id. at 492-93.

Although in Jacobson I, the plaintiff initially raised only issues under state law in challenging SWANN's right to bill him for its services, he added a new theory under federal law in his Petition for Writ of Certiorari to the United States Supreme Court. The plaintiff argued that SWANN's regulations and opt out procedures violate the Commerce Clause of the United States Constitution and burden interstate commerce. See Petition for Writ of Certiorari, 2003 WL 22428411 at *4 (Apr. 3, 2003).

In the present litigation, the allegations of the complaint arise out of the same "operative facts" as in Jacobson I. See, e.g., Graham v. Waggener, 367 N.W.2d 707, 709 (Neb.1985): "The doctrine of res judicata applies when the same cause of action is sought to be litigated a second time. Whether the subsequent suit alleges the same cause of action as the prior suit is determined by whether the right sought to be vindicated rests upon the same operative facts. If so, the same cause of action has been alleged, even if different theories of recovery are relied upon." See also Cole v. Clarke, 641 N.W.2d 412, 416 (Neb. App .2002) ("A review of the operative petition in the present case reveals that it is based on precisely the same operative facts as we outlined in our opinion in Cole I. As such, we are not persuaded by Cole's assertion that the present case is premised on a different cause of action simply because he has specified a different statutory basis for the current action. This amounts to alleging a different theory of recovery, but the operative facts and the alleged legal right to be vindicated is exactly the same as in Cole I. As such, this is a subsequent suit on the same cause of action as Cole I.").

In both cases, the plaintiff alleged that he received billing statements from SWANN demanding payments; that he repeatedly informed SWANN that he does not use SWANN's services nor intend to pay SWANN; and that he disposes of all solid waste by transporting it to a solid waste facility outside of Nebraska. However, in the current complaint, the plaintiff has included new legal theories in support of his reasserted position that he has the legal right to be left alone by SWANN. The plaintiff alleges that: (1) Neb. Rev. Stat. § 13-2020 is unconstitutional and deprives the plaintiff of "equal access" and equal protection. (2) SWANN is inflicting cruel and unusual punishment on the plaintiff. (3) SWANN has denied the plaintiff due process. The plaintiff also mentions that garbage is an article of interstate commerce.

Most important, however, the plaintiff does *not* allege that he has ever complied with the procedures necessary to opt out of SWANN's garbage collection, transportation and disposal services and to obtain an exemption from SWANN's fees.

In addition to the added legal theories appended to the previously asserted operative facts, the plaintiff alleges the following new information in his present complaint: On August 5, 2003, SWANN assessed the *property owner* for the plaintiff's unpaid garbage service fees. SWANN failed to provide the owner a hearing. As a result of the assessment, the liability may be converted to a tax lien in three years, and the property may be foreclosed. Therefore, the owner of the property suffered a deprivation of due process from the denial of a hearing.

I conclude from a comparison of the record in Jacobson I and the complaint in the above-entitled case that the plaintiff's present claims and all relevant factual issues are precluded by res judicata and collateral estoppel from relitigation. Other than the issues concerning the property owner's right to due process, all of the other issues and legal rights asserted by the plaintiff in the present case either were raised or could have been raised in Jacobson I.

As for the property owner's right to due process, the plaintiff may not assert the rights of others. See, e.g., Warth v. Seldin, 422 U.S. 490, 500 (1975): A "plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Accord Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001). Therefore, the plaintiff's allegations regarding the rights of the property owner fail to state a claim on which relief may be granted as to the plaintiff.

THEREFORE, IT IS ORDERED:

1. That filing no. 22, the defendant's Motion for Summary Judgment, is granted;

2. That the plaintiff's complaint and this action will be dismissed with prejudice; and

3. That a separate judgment will be entered accordingly.

DATED this 25th day of August, 2005.

BY THE COURT:

s/ F. A. GOSSETT
United States Magistrate Judge